UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARYKATE BURNS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED AIRLINES, INC. and VIKTOR BATISCHEW**<br>**Defendant.** | **Case No.: 1:25-CV-11606** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNITED AIRLINES, INC'S MOTION TO DISMISS COUNT III**

Plaintiff, Marykate Burns, by and through her attorneys, Romanucci & Blandin, LLC, submits this Response in Opposition to Defendant United Airlines, Inc.'s Motion to Dismiss Count III of the First Amended Complaint. The Court should deny Defendant's Motion.

**STATEMENT OF FACTS RELEVANT TO THIS MOTION**

United Airlines is a common carrier that employs gate agents, flight crew, and other personnel tasked with ensuring the safety and well-being of its passengers. (ECF 17 ¶¶ 6–7.) United has access to internal incident reports filed by employees concerning disruptive passengers, as well as lawsuits filed against the airline. (*Id.* ¶ 73.) United knew that 67% of sexual assaults on aircraft involve alcohol or drugs. (ECF 17 at 2.)

On November 2–3, 2024, United operated Flight 1759, a red-eye from Kona, Hawaii to Denver, Colorado. (ECF 17 ¶ 8.) Plaintiff Marykate Burns was a fare-paying passenger. (*Id.* ¶ 12.) Defendant Viktor Batischew was visibly intoxicated and

behaving belligerently while boarding. (*Id.* ¶ 15.) Despite this, United's gate agent and crew permitted him to board. (*Id.* ¶ 16.) During the flight, a United flight attendant confirmed to Marykate that Batischew was so intoxicated he could barely walk. (*Id.* ¶ 56.)

Marykate fell asleep in her vacant row. (ECF 17 ¶¶ 19–20.) She awoke to find Batischew on top of her, touching her buttocks and vaginal area. (*Id.* ¶¶ 21–22.) No crew member intervened during the assault. (*Id.* ¶ 34.) After Marykate reported the assault to five or six flight attendants, no United personnel took action against Batischew. (*Id.* ¶¶ 35–40.) Batischew approached Marykate eight more times before two fellow passengers physically restrained him. (*Id.* ¶¶ 54–58.) Marykate deplaned alone; no flight attendant offered assistance in making a report, and United failed to provide authorities with any information regarding the assault. (*Id.* ¶¶ 60, 66.)

Long before Marykate's flight, United had extensive notice of the risk of in-flight sexual assault involving alcohol. In 2018, the FBI issued a public advisory warning of a substantial increase in reported in-flight sexual assaults, specifically noting that incidents occur most frequently on overnight red-eye flights in dark cabins, where offenders exploit victims' reluctance to cause a disruption. (ECF 17 ¶¶ 76–83.) United was sued in 2017 after an intoxicated passenger urinated on a fellow passenger (*id.* ¶ 92); in 2018 after a passenger was groped three times by a seatmate who had been served multiple vodkas, with a flight attendant telling the victim to return to her seat and speak to her assailant (*id.* ¶ 93); in 2022 after a passenger was accused of raping another in first class on an overnight flight (*id.* ¶ 95); and in 2023

after a passenger was sexually assaulted by a seatmate who had been served at least six screwdrivers, following which United privately acknowledged it "is not acceptable for a flight attendant to serve so much alcohol to a passenger" (*id.* ¶¶ 97, 97e). In August 2023, video captured a United flight attendant admitting of an intoxicated passenger: "I knew you were drinking wine and you're not allowed to. And I still let you board the aircraft." (*Id.* ¶ 96.) In January 2024 — nine months before Marykate's assault — Aundrea White was sexually assaulted multiple times on a United flight by a visibly intoxicated passenger; flight attendants failed to intervene even while the plane's door was still open. (*Id.* ¶ 98.)

Despite this history, United publicly projected a posture of zero tolerance. In 2017, United's CEO wrote to all employees that sexual harassment and predation have "absolutely no place anywhere in our society—including, and especially, in our industry and on our aircraft." (ECF 17 ¶ 85.) United has since scrubbed that letter from its website. (*Id.* ¶ 86.) United intentionally concealed from the public and from passengers the frequency of in-flight sexual assaults aboard its aircraft, the number of complaints it had received, and its repeated failure to act, all to protect its corporate reputation and business interests. (*Id.* ¶¶ 131–132.)

Before her flight, Marykate purchased her ticket relying on United's representations that it would provide safe and secure transportation. (ECF 17 ¶¶ 125–127.) Had she known of United's documented history of ignoring in-flight sexual assault or its repeated violations of federal regulations prohibiting the boarding of intoxicated passengers, she would not have flown on Flight 1759. (*Id.* ¶¶ 133–134.)

United's concealment of these material facts deprived Marykate of the opportunity to make an informed decision about her safety and exposed her to a known and preventable danger. (*Id.* ¶ 135.)

## <u>ARGUMENT</u>

Motions to dismiss under Rule 12(b)(6) attack the legal sufficiency of a pleading; they do not challenge its factual allegations. Therefore, a court must "construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A complaint will survive a motion to dismiss if these allegations state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim, a plaintiff's allegations need only make out a "plausible account" of his or her entitlement to relief. *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This happens when the complaint alleges facts that "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself could these things have happened, not did they happen." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).

### I. PLAINTIFF'S FRAUDULENT CONCEALMENT CLAIM IS NOT PREEMPTED BY THE AIRLINE DEREGULATION ACT.

United's preemption argument rests on an overbroad reading of the Airline Deregulation Act ("ADA") that is squarely foreclosed by Supreme Court precedent

and the weight of authority addressing safety-based claims. The ADA does not immunize airlines from state-law fraud claims that target the concealment of known physical dangers to passengers.

### A. The ADA's Preemption Clause Does Not Reach Claims Targeting Physical Safety Failures.

The ADA preempts state laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). While the phrase "related to" is broad, the Supreme Court has been equally clear that it is not boundless. State-law claims with only a "tenuous, remote, or peripheral" connection to airline economics are not preempted. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992). Critically, the ADA does not provide airlines with immunity from generally applicable state laws, nor was it enacted to be "a safe harbor for airlines from civil tort claims." *Chrissafis v. Continental Airlines, Inc.*, 940 F. Supp. 1292, 1299 (N.D. Ill. 1996).

United argues that because Plaintiff's fraudulent concealment claim references ticketing and the ticket-purchase transaction, it necessarily "relates to" airline services and is preempted. (ECF 26 at 7–8.) That argument conflates the mechanism of concealment with the subject matter of the claim. Plaintiff's fraudulent concealment claim does not seek to regulate how United prices tickets, structures routes, or competes in the marketplace. It seeks damages for United's concealment of a known pattern of physical, sexual assaults—facts that are material to passenger safety and that are categorically unavailable to an ordinary ticket buyer through any reasonable inquiry.

The Fifth and Ninth Circuits, each sitting en banc, have held that the ADA

does not preempt personal injury and safety claims arising from in-flight conduct. *Hodges v. Delta Air Lines, Inc.*, 44 F.3d 334, 336–37 (5th Cir. 1995) (en banc) (drawing a fundamental distinction between economic "services" and personal injury claims); *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265–66 (9th Cir. 1998) (en banc) (ADA does not preempt state tort claims arising from airline's failure to ensure passenger safety). The Second Circuit is in accord: personal injury claims arising from airline operations survive preemption because they do not regulate the economic bargain between airline and customer. *Stagl v. Delta Air Lines, Inc.*, 52 F.3d 463, 466-67 (2d Cir. 1995) (ADA did not preempt negligence claim by passenger physically injured during deplaning). These courts recognized that Congress enacted the ADA to deregulate airline economics — not to shield airlines from accountability for physical injuries caused by their concealment of known dangers.

This distinction matters here because the complaint alleges that United concealed, from the passengers, a documented and escalating pattern of in-flight sexual assaults involving alcohol, including incidents on its own flights, notice from the FBI, and internal knowledge derived from passenger complaints and lawsuits. (ECF 17 ¶¶ 72–99, 129–132.) Allowing Plaintiff's claim to proceed would not require United to alter its ticket prices, adjust its routes, or change any economic feature of its services. It would require United to be truthful about known physical dangers. That is not the kind of state-law interference the ADA was designed to prevent.

B. *Wolens* Expressly Preserves Claims Enforcing an Airline's Own Voluntary Representations.

United relies primarily on *American Airlines, Inc. v. Wolens*, 513 U.S. 219

(1995), and its progeny, but *Wolens* cuts directly against United's position.

In *Wolens*, the Supreme Court held that while the ADA preempts claims that seek to impose "its own substantive standards with respect to rates, routes, or services," it expressly does not preempt claims that "seek[] recovery solely for the airline's alleged breach of its own, self-imposed undertakings." 513 U.S. at 232, 220. The Court distinguished between states acting as market regulators and plaintiffs seeking to enforce privately ordered obligations. *Id.* Significantly, in *Wolens* itself, American Airlines expressly conceded that it was not arguing "that the ADA preempts personal injury claims relating to airline operations." 513 U.S. at 231 n.7. Even United's lead precedent thus recognizes the boundary of ADA preemption.

Here, Plaintiff does not ask the Court to impose external safety standards on United. She asks the Court to hold United accountable for the gap between what it told the public and what it knew. United publicly declared through its CEO's letter, its Conditions of Carriage, and its safety messaging that it had zero tolerance for sexual misconduct and would protect passengers from foreseeable harm. (ECF 17 ¶¶ 84–86.) At the same time, it concealed from passengers the documented reality: that it routinely allowed intoxicated passengers to board, continued serving alcohol to intoxicated passengers in flight, and had accumulated years of complaints about alcohol-fueled sexual assaults that it declined to act upon. (*Id.* ¶¶ 88–99, 131–132.)

Under *Wolens*, enforcing an airline's own self-imposed representations is precisely what state law is permitted to do. Plaintiff's claim does not seek to impose obligations United never undertook; it seeks to hold United to the obligations it

publicly proclaimed. The ADA does not shield that conduct.

C. The Cases United Relies on Are Distinguishable.

United's preemption argument depends heavily on *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000), *O'Callaghan v. AMR Corp.*, No. 04 C 4005, 2005 U.S. Dist. LEXIS 12889 (N.D. Ill. June 8, 2005), and *Kislov v. Am. Airlines, Inc.*, No. 17 C 9080, 2022 U.S. Dist. LEXIS 50841 (N.D. Ill. Mar. 22, 2022). (ECF 26 at 6–8.) None of those cases control here.

In *Mesa Airlines*, the Seventh Circuit addressed a claim that United had fraudulently induced a competitor airline through misrepresentations in a business-to-business contract, which is a dispute about competitive airline economics. 219 F.3d at 609–10. The court's preemption analysis was directed at claims that would have regulated competitive marketing between airlines, not claims by an injured passenger seeking redress for physical harm caused by concealed safety failures.

In *O'Callaghan*, the plaintiffs alleged they were misled about the amount of legroom in coach, which was an advertising claim about a feature consumers can compare across airlines. 2005 U.S. Dist. LEXIS 12889, at *1–2. Plaintiff's claim here is categorically different from a legroom advertisement: no consumer can comparison-shop airlines based on their internal incident databases, scrubbed CEO letters, or suppressed complaint histories. That information is uniquely within United's control and concerns physical safety, not the amenities of flight.

In *Kislov*, the claims concerned biometric voice recognition software integrated into American Airlines customer service hotline to attract customers and reduce call

agent volumes. 2022 U.S. Dist. LEXIS 50841, at *6. The court found the hotline was a "service" passengers bargained for. *Id.* at *7–8. None of that analysis applies here. Courts have drawn a consistent line between claims that regulate economic aspects of airline service (which are preempted) and claims arising from outrageous or tortious conduct toward passengers that bear only a tenuous relationship to the airline's economic bargain with its customers (which are not preempted). Passenger safety during flight is not a "bargained-for aspect of airline operations over which carriers compete," *Branche v. AirTran Airways, Inc.,* 342 F.3d 1248, 1258 (11th Cir. 2003), but a bedrock expectation that predates and transcends the competitive marketplace the ADA sought to deregulate.

## II. PLAINTIFF HAS ADEQUATELY STATED A FRAUDULENT CONCEALMENT CLAIM UNDER RULE 9(b) AND ILLINOIS LAW.

United's motion to dismiss Count III under Rules 9(b) and 12(b)(6) should be denied. The Complaint pleads a particularized account of United's deliberate concealment of known, material safety risks from the passengers it induced to fly. United's arguments misconstrue the pleading standard, misstate the duty-to-disclose doctrine under Illinois law, and disregard the specific allegations in the Complaint that answer Rule 9(b)'s "who, what, when, where, and how" inquiry. Should the Court find any element insufficiently pled, Plaintiff requests leave to amend.

### A. The Complaint Alleges a Duty to Disclose.

United argues that no duty to disclose can exist absent a formal fiduciary relationship. (ECF 26 at 10.) Illinois law points the other way.

A fiduciary relationship is one—but not the only—basis for a duty to disclose.

The duty also arises when the defendant occupies a position of informational superiority over the plaintiff. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996). While the court in *Connick* ultimately found the complaint insufficient because it alleged nothing more than a standard manufacturer-consumer relationship, the principle it articulated is satisfied here: United possesses exclusive knowledge of its own incident reports, complaint history, prior lawsuits, and internal acknowledgments of policy violations. (ECF 17 ¶¶ 72–74.)

Moreover, United was not merely silent about that history. It made affirmative public-facing representations through its CEO's letter, Conditions of Carriage, and safety messaging that it maintained zero tolerance for sexual misconduct and would protect passengers from foreseeable harm, then scrubbed the CEO's letter from its website. (ECF 17 ¶¶ 84–86, 125–127.) United's exclusive possession of its own incident history establishes the informational superiority *Connick* contemplated; its affirmative safety representations, made while suppressing the contrary internal reality, constitute the deceptive conduct that transforms silence into fraud.

The cases cited by United's are not on point. *Karkomi v. Am. Airlines, Inc.*, 717 F. Supp. 1340, 1342 (N.D. Ill. 1989), held only that the carrier-passenger relationship, standing alone, does not create fiduciary duties. It does not address a carrier that made affirmative safety representations while concealing a documented pattern of failures. *In re Boeing 737 Max Pilots Litig.*, 638 F. Supp. 3d 838, 863 (N.D. Ill. 2022), arose in a business-to-business context involving commercial pilots with access to independent technical information, not ordinary consumers who must rely entirely

on the carrier's public representations. The duty here arises not from the relationship label alone, but from United's informational dominance and active deceptive conduct.

B. <u>The Complaint Adequately Pleads Each Element</u>**.**

The Complaint alleges: (1) United knew of an escalating pattern of in-flight sexual assaults, particularly on overnight flights, and of its systemic alcohol-policy violations (ECF 17 ¶¶ 72–99, 129–132); (2) United intentionally concealed those facts to "protect its corporate reputation, avoid regulatory scrutiny, and preserve its business interests" (ECF 17 ¶ 131); (3) this information was contained within United Airline's **internal** databases (ECF 17 ¶ 73-74); (4) Plaintiff would not have flown on Flight 1759 had these facts been disclosed (ECF 17 ¶¶ 133–134); and (5) United's concealment directly and proximately caused her assault (ECF 17 ¶¶ 135–137).

United's argument that public news articles put Plaintiff on notice of the concealed facts misses the point entirely. (ECF 26 at 11–12.) The concealed facts are not the general proposition that in-flight assaults occur. What United concealed is its own internal history: how many incidents it has documented, how many complaints it has received, how often its employees have violated its own alcohol-service policies, and what it has done (or failed to do) in response. That information exists nowhere but inside United's own systems. Airlines do not report incident data to regulatory agencies in any form accessible to the public, and United does not voluntarily disclose it. A passenger reading every news article ever published about in-flight assault would still have no idea how United's internal record compares to its public posture of zero tolerance. Plaintiff specifically alleges that the issues of in-flight sexual

assault were known to the industry but "largely hidden from the general public." (ECF 17 ¶ 75-76.) The gap between what United knew and what any passenger could reasonably discover is precisely what the duty to disclose is designed to address.

C. The Complaint Satisfies Rule 9(b).

Rule 9(b) requires the "who, what, when, where, and how" of the fraud. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008). The Complaint provides each:

**Who:** United Airlines, acting through its corporate communications, ticketing process, gate agents, and flight crew. (ECF 17 ¶¶ 6–7, 84–86, 125–126.)

**What:** United concealed its documented pattern of in-flight sexual assaults, its history of alcohol-policy violations, its internal complaint history, and its failure to take corrective action, while simultaneously representing safety and zero tolerance. (ECF 17 ¶¶ 84–86, 129–132.)

**When:** Before Plaintiff's November 2, 2024 ticket purchase, through representations on United's website, Conditions of Carriage, and safety messaging. The concealed incidents span 2017 through January 2024. (ECF 17 ¶¶ 84–99, 125.)

**Where:** United's website, ticketing platform, and Conditions of Carriage. (ECF 17 ¶¶ 84–86, 125–126.)

**How:** United made affirmative zero-tolerance representations while suppressing its incident history, removing the CEO's public commitment from its website, and continuing practices it internally acknowledged as unsafe. (ECF 17 ¶¶ 84–99, 131–132.)

United's argument that Plaintiff failed to identify a specific individual who "concealed" these facts (ECF 26 at 9–10) applies the rule too rigidly. Courts in this Circuit recognize that for corporate fraud by omission (where the relevant decisions are internal to the defendant) naming the corporate actor and identifying the mechanism of concealment satisfies Rule 9(b) at the pleading stage. Plaintiffs are not expected to specify the exact time and particular place of each misrepresentation or omission. *Towers Fin. Corp. v. Solomon*, 126 F.R.D. 531, 535 (N.D. Ill. 1989) (other citations omitted). Consistent with this standard, courts have found Rule 9(b) satisfied where a plaintiff outlines the "basic scheme" of the alleged fraud. *Id.* (citing *Morgan v. Kobrin Securities, Inc.,* 649 F. Supp. 1023, 1028–29 (N.D. Ill. 1986)). Rule 9(b) does not require that all evidentiary facts be pleaded. *Id.*

D. If Any Element Is Insufficiently Pled, Leave to Amend Should Be Granted.

Dismissal with prejudice is appropriate only when it is "certain" that the amendment would be "futile." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). It would not be here. The Complaint is based on documented incidents, publicly acknowledged failures, and internal conduct that discovery will further illuminate. If additional particularity is required on any element, Plaintiff should be afforded an opportunity supply it. Therefore, dismissal with prejudice is unwarranted.

## CONCLUSION

For all of these reasons, Defendant's Motion to Dismiss should be denied in its entirety. If the Court concludes that the complaint requires additional particularity,

Plaintiff respectfully requests leave to amend.

**<u>DATED</u>**: May 22, 2026

Respectfully submitted,

*Sarah M. Raisch*

____________________________
Attorney for the Plaintiff

Antonio Romanucci
aromanucci@rblaw.net
Daisy Ayllon
dayllon@rblaw.net
Sarah M. Raisch
sraisch@rblaw.net
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Suite 900
Chicago, IL 60654
Tel: (312) 253-8618
Fax: (312) 458-1004
FIRM ID: 35875

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certify that on **May 22, 2026**, she electronically filed **Plaintiff's Response in Opposition to Defendant United Airlines, Inc's Motion to Dismiss,** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants:

By: /s/ *Sarah M. Raisch*

One of Plaintiff's Attorneys

***Counsel for Defendants, United Airlines, Inc.:***
Michael G. McQuillen
Stephen A. Hench
Hinshaw & Culbertson LLP
151 N. Franklin, Suite 2500
Chicago, IL 60606
6188166 (312) 704-3000
mmcquillen@hinshawlaw.com
shench@hinshawlaw.com