# EXHIBIT B

# Towers Financial Corp. v. Solomon

United States District Court for the Northern District of Illinois, Eastern Division

July 10, 1989, Decided

No. 89 C 913

**Reporter**

126 F.R.D. 531 *; 1989 U.S. Dist. LEXIS 8007 **; Fed. Sec. L. Rep. (CCH) P94,752

TOWERS FINANCIAL CORPORATION and Towers Diversified Corporation, Plaintiffs, v. Ernest M. SOLOMON, Cadillac Insurance Company, Cadillac Life Insurance Company, Carmen Monaco, Casianito Q. Castro, and Martin Hoffman, Defendants

**Counsel: [**1]** Robert W. Hallock, Esq., James K. Meguerian, Esq., Keck, Mahin & Cate, Chicago, Illinois, Michael Rosoff, Esq., Towers Financial Corporation, New York, New York, appeared on behalf of the Plaintiffs.

Richard T. Franch, Esq., Russ M. Strobel, Esq., Gregory S. Gallopoulos, Esq., Kathleen C. Hintze, Esq. Jenner & Block, Chicago, Illinois, Michael M. Jacob, Esq., Butzel, Long, Gust, Klein & Van Zile, P.C., Birmingham, Michigan, appeared on behalf of Defendants Ernest M. Solomon, Cadillac Insurance Company, Cadillac Life Insurance Company, and Casianito Q. Castro.

Richard J. Prendergast, Esq., James Prendergast, Esq., Joseph E. Tighe, Esq., Richard J. Prendergast, Ltd., Chicago, Illinois appeared on behalf of Defendant Carmen Monaco.

**Judges:** Nicholas J. Bua, United States District Judge.

**Opinion by:** BUA

## Opinion

**[*533]** ORDER

Plaintiffs Towers Financial Corporation ("Towers Financial") and Towers Diversified Corporation ("Towers Diversified") filed the instant action complaining of defendants' alleged fraudulent conduct in connection with a certain financial transaction. Plaintiffs' ten-count complaint asserts claims for federal and state securities law violations, RICO, fraud, breach of contract, and breach of fiduciary duty. **[**2]** Shortly after plaintiffs filed their complaint, defendant Carmen Monaco submitted a motion to dismiss the counts in which he is named as a defendant: Counts I, II, III, and V. Meanwhile, defendants Cadillac Insurance Company ("Cadillac"), Cadillac Life Insurance Company ("Cadillac Life"), Ernest M. Solomon, and Casianito Q. Castro filed a motion for a more definite statement with respect to all counts except Count IX, which contains a breach of contract claim, and Count VIII, which is asserted only against defendant Martin Hoffman. Plaintiffs then filed a motion for a default judgment against Cadillac on Count IX. Since these three motions are somewhat related, the court will address all of them in this single order.

FACTS [1]

During the earlier part of 1987, defendant Ernest Solomon owned 83 percent of the stock of a holding company called United Diversified Corporation ("UDC"). UDC owned 100 percent of Associated Life Insurance Company

---

[1] For the purpose of resolving defendants' motions, the court must accept all of the factual allegations in the complaint as true. *See* Gomez v. Illinois State Board of Education, 811 F.2d 1030, 1039 (7th Cir. 1987).

EXHIBIT B

("Associated Life"). **[**3]** Associated Life, in turn, owned 100 percent of United Fire Insurance Company ("United Fire"). In addition to possessing a majority interest in UDC, Solomon acted as Chairman of the Board of UDC, Associated Life, and United Fire. Defendant Carmen Monaco was president of all three companies.

Sometime in May 1987, Solomon and Monaco approached representatives of Towers Financial to ask if Towers Financial would consider providing financing for UDC, Associated Life, and United Fire. Towers Financial, a wholly-owned subsidiary of Towers Diversified, declined the request for financing. Solomon then inquired whether Towers Financial would be interested in purchasing Solomon's UDC stock. Solomon and Monaco admitted to the Towers Financial representatives that UDC, Associated Life, and United Fire were in conservatorship pursuant to the Illinois Insurance Code. However, Solomon and Monaco explained that the poor underwriting practices and decisions which caused the companies' conservatorship status had been corrected. Solomon and Monaco also assured the Towers Financial representatives that the companies' reserves were more than adequate to meet all pending and potential claims and that the **[**4]** companies were in fact profitable.

Based on Solomon's and Monaco's representations, Towers Financial decided to explore the possibility of purchasing Solomon's UDC securities. Toward that end, Towers Financial hired defendant Martin Hoffman as a consultant. Towers Financial asked Hoffman, who held himself out as an expert in evaluating the financial condition of insurance companies, to investigate the representations made by Solomon and Monaco and to provide advice regarding the desirability of acquiring Solomon's shares of UDC stock. Towers Financial then entered into negotiations with Solomon to purchase Solomon's UDC securities. During the course of these negotiations, Solomon and Monaco, as well as defendant Casianito Castro, who was an officer **[*534]** of UDC, Associated Life, and United Fire, allegedly made various material misrepresentations and omissions. Specifically, plaintiffs claim Solomon, Monaco, and Castro misrepresented that:

> (1) the premium and claim reserves of Associated Life and United Fire were more than adequate to cover any pending and potential claims;
>
> (2) the financial statements of Associated Life and United Fire which Solomon provided to Towers Financial were **[**5]** fair and accurate;
>
> (3) Associated Life and United Fire were being operated in accordance with sound underwriting practices;
>
> (4) UDC had entered into a profitable agreement with defendant Cadillac under which UDC would write insurance in the name of Cadillac, collect premiums therefor, pay the claims and expenses associated therewith, and retain the bulk of the difference as an "administrative fee."

Plaintiffs also claim that Solomon, Monaco, and Castro concealed the fact that Solomon, Cadillac, and Cadillac Life had wrongfully misappropriated and converted assets of UDC by:

> (1) diverting premiums received by Associated Life and United Fire to the use of Solomon, Cadillac, and Cadillac Life, with no intention of repaying these funds;
>
> (2) creating false and misleading accounting records which made it appear that UDC, Associated Life, and United Fire owed money to Solomon, Cadillac, and Cadillac Life, when in fact the reverse was true;
>
> (3) causing United Fire and UDC to be operated in violation of the Illinois Insurance Code, including operating UDC as an unlicensed insurance company and operating United Fire as an unlicensed reinsurer;
>
> (4) removing securities and other **[**6]** assets from the control of Associated Life and United Fire and diverting these assets to Solomon, Cadillac, and Cadillac Life.

According to the amended complaint, Solomon, Monaco, and Castro made these misrepresentations and omissions (1) individually; (2) on behalf of Cadillac, for whom Solomon and Castro were officers; and (3) on behalf of Cadillac Life, for whom Solomon was both an officer and a director. The complaint further claims that the misrepresentations were made with the specific intent to defraud Towers Financial into purchasing Solomon's shares in UDC. In addition, plaintiffs allege that Hoffman informed Towers Financial that defendants' misrepresentations were true,

despite the fact that he either knew or recklessly failed to discover that the misrepresentations were false. Towers Financial, reasonably relying on the misrepresentations and omissions of Hoffman, Solomon, Monaco, Castro, Cadillac, and Cadillac Life, entered into an agreement to purchase Solomon's UDC stock on October 6, 1987. Plaintiffs maintain that as a result of defendants' fraudulent conduct they have suffered damages in excess of five million dollars.

On the basis of these factual allegations, plaintiffs **[**7]** have asserted ten claims. Counts I through IV assert claims for federal securities law violations; [2] **[**8]** Count V alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *18 U.S.C. §§ 1961-1968 (1982)*; Count VI alleges a violation of Michigan's Uniform Securities Laws; Counts VII, VIII, and X assert fraud claims; and Count IX asserts a claim for breach of contract. In response to these claims, all defendants except Monaco and Hoffman have moved for a more definite statement. [3] Monaco, in lieu of moving for a more definite statement, has moved to dismiss the counts in which he is named as a defendant. Nevertheless, Monaco's motion to dismiss makes essentially the same argument as the motion for a more definite statement filed by Castro, Solomon, Cadillac, and Cadillac Life. Both motions argue that the allegations in the **[*535]** complaint fail to met the particularity requirements of *Rule 9(b) of the Federal Rules of Civil Procedure*. The court will therefore address these motions simultaneously. The court will then consider plaintiffs' motion for a default judgment on Count IX.

DISCUSSION

I. *Rule 9(b): The Specificity of Plaintiffs' Allegations*

A. Counts I, IV, VI-VII, X: Securities Fraud and Common Law Fraud

Defendants maintain that plaintiffs' securities fraud and common law fraud claims do not meet the particularity requirements of *Rule 9(b)* because these claims do not set forth the specific time and place each misrepresentation was made, who made them, or to whom they were made. Defendants further argue that these claims lack the requisite specificity because plaintiffs only generally allege that defendants converted and misappropriated assets of UDC, Associated Life, and United Fire. Defendants contend that plaintiffs are required under *Rule 9(b)* to allege the particular assets allegedly misappropriated, the dates, times and places that the misappropriations allegedly took place, the nature and means of the alleged misappropriations, and the manner in which the misappropriations were allegedly concealed.

Defendants' view of *Rule 9(b)*, however, is too restrictive. The specificity requirements of *Rule 9(b)* are imposed to ensure that defendants are apprised of **[**9]** the claimed fraud in a manner sufficient to permit adequate responsive pleadings. *Elliott Graphics, Inc. v. Stein, 660 F. Supp. 378, 380 (N.D. Ill. 1987)*; *Onesti v. Thomson McKinnon Securities, Inc., 619 F. Supp. 1262, 1265 (N.D. Ill. 1985)*. To sufficiently put defendants on notice of the fraud claim, plaintiffs cannot simply assert conclusory allegations. *Ambling v. Blackstone Cattle Co., Inc., 658 F. Supp. 1459, 1468 (N.D. Ill. 1987)*; *Rudolph v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 100 F.R.D. 807, 809 n.2 (N.D. Ill. 1984)*. However, plaintiffs are not expected to specify the exact time and particular place of each misrepresentation or omission. *Elliott Graphics, 660 F. Supp. at 380*; *Baselski v. Paine, Webber, Jackson & Curtis, Inc., 514 F. Supp. 535, 540 & n.2 (N.D. Ill. 1981)*. *Rule 9(b)* must be read in conjunction with Rule 8, which requires only a "short and plain statement" of the claim. *Tomera v. Galt, 511 F.2d 504, 508 (7th Cir. 1975)*. Therefore, *Rule 9(b)* simply requires a sketch of the fraudulent scheme. *See* *Tomera, 511 F.2d at 508-09*; *Ambling, 658 F. Supp. at 1459* (requiring only "bare bones" of fraudulent scheme to be alleged); **[**10]** *Morgan v. Kobrin Securities, Inc., 649 F. Supp. 1023, 1028-29 (N.D. Ill. 1986)* (*Rule 9(b)* satisfied where "basic scheme" outlined). It does not require that all of plaintiffs' evidentiary facts be pled. *Caliber Partners, Ltd. v. Affeld, 583 F. Supp. 1308, 1311 (N.D. Ill. 1984)*; *Cottman Transmission Systems, Inc. v. Dubinsky, 95 F.R.D. 351, 352 (E.D. Pa. 1982)*.

---

[2] Plaintiffs allege violations of § 12(2) of the Securities Act of 1933, *15 U.S.C. § 77l(2)*, *§ 10(b)* of the Securities Exchange Act of 1934, *15 U.S.C. § 78j(b)*, and *Rule 10b-5* of the Securities and Exchange Commission, *17 C.F.R. § 240.10b-5*.

[3] Plaintiffs voluntarily dismissed Hoffman from this action on May 26, 1989.

In the instant case, plaintiffs' claims do not contain mere conclusory allegations of fraud. Plaintiffs specifically describe the nature of the alleged misrepresentations, the general time frame in which they were made, and the parties involved. [4] Plaintiffs also state the consequences of the fraud. While plaintiffs do not set forth the place where the fraud allegedly transpired, the absence of the location of the fraud does not necessarily render plaintiffs' fraud claim insufficient for purposes of *Rule 9(b)*. *See UNR Industries, Inc. v. Continental Insurance Co., 623 F. Supp. 1319, 1329 (N.D. Ill. 1985)*. The claim must be viewed as a whole. *Id.*

**[**11]** In addition, contrary to defendants' arguments, plaintiffs are not required to set forth all of the specific facts and circumstances surrounding defendants' alleged **[*536]** misappropriations from UDC, Associated Life, and United Fire. Nor can plaintiffs reasonably be expected to set forth the exact manner in which these misappropriations were concealed from them. Where, as here, the fraud claim is based on material omissions, it is unlikely that plaintiffs know the full extent of the deception or how it was achieved. This lack of complete knowledge does not prohibit them from recovering for the alleged fraud. *See Frymire v. Peat, Marwick, Mitchell & Co., 657 F. Supp. 889, 894 (N.D. Ill. 1987)*. Such a rule would enable fraud defendants to use *Rule 9(b)* as a shield to fend off legitimate fraud claims. That is certainly not the intention of the rule. Moreover, even if plaintiffs had full knowledge of the nature of the misappropriations, how they were achieved, and how they were concealed from plaintiffs, this information is the type of evidentiary detail more properly required to be disclosed during discovery, not in the pleadings. *See Roberts v. Acres, 495 F.2d 57, 57-58 (7th Cir. 1974)*. **[**12]** Therefore, this court finds plaintiffs' fraud claims sufficient to meet the particularity requirements of *Rule 9(b)*.

B. Count V: RICO

Defendants also argue that plaintiffs' RICO allegations do not set forth with particularity each element of a RICO claim. Defendants thus claim that the court should find plaintiffs' RICO claim deficient for failing to conform to the specificity requirements of *Rule 9(b)*. By its terms, however, *Rule 9(b)* requires particularity only in "all averments of fraud or mistake." Therefore, *Rule 9(b)* applies to plaintiffs' RICO claim only to the extent that the claim is based on racketeering acts involving fraud. In all other respects, the liberal notice pleading philosophy of the Federal Rules applies to plaintiffs' RICO claim. *See Sutliff, Inc. v. Donovan Companies, Inc., 727 F.2d 648, 653 (7th Cir. 1984)*; *Schacht v. Brown, 711 F.2d 1343, 1352* and n.7 (7th Cir.), *cert. denied sub. nom. Arthur Andersen & Co. v. Schacht, 464 U.S. 1002, 78 L. Ed. 2d 698, 104 S. Ct. 508 (1983)*. Contrary to defendants' arguments, plaintiffs need not plead every element of RICO with particularity. Only their fraud allegations which, as discussed above, are sufficiently detailed, must satisfy *Rule **[**13]** 9(b)*. Therefore, the court rejects Monaco's request that plaintiffs' RICO claim be dismissed for lack of factual specificity. The court further rejects the request of Cadillac, Cadillac Life, Castro and Solomon that plaintiffs be required to submit a more factually detailed RICO claim.

II. *Plaintiffs' Motion for Default Judgment Against Cadillac on Count IX*

On March 22, 1989, this court entered an order granting Cadillac, Cadillac Life, Solomon, and Castro an extension until March 27 to answer or otherwise respond to plaintiffs' complaint. On March 27, those four defendants filed the motion for a more definite statement addressed by the court herein. By its express terms, however, that motion pertains to all counts "except Count IX." Plaintiffs point out that as a result, Cadillac has failed to answer or respond to Count IX, which asserts a breach of contract claim against Cadillac. Plaintiffs have, therefore, moved for a default judgment against Cadillac for the amount claimed in Count IX -- $ 1,313,665.

Generally, a nonanswering defendant is subject to a default judgment. *Marshall & Ilsley Trust Co. v. Pate, 819 F.2d 806, 811-12 (7th Cir. 1987)*. However, the entry of a default **[**14]** judgment is committed to the sound discretion of the district court. *Hamm v. DeKalb County, 774 F.2d 1567, 1576 (11th Cir. 1985)*, *cert. denied, 475 U.S. 1096, 89 L. Ed. 2d 894, 106 S. Ct. 1492 (1986)*; *Mason v. Lister, 562 F.2d 343, 345 (5th Cir. 1977)*. In exercising its discretion, the court should keep in mind that default judgments should not be used merely to punish technical violations of the Federal Rules. *United States v. Manos, 56 F.R.D. 655, 659 (S.D. Ohio 1972)*. Moreover, entry of a

---

[4] Since the complaint specifically attributes certain misrepresentations to Monaco, the court rejects Monaco's argument that he has not been apprised of which misrepresentations were allegedly made by him. The complaint is not unclear as to Monaco's role merely because other defendants allegedly made the same misrepresentations as he is claimed to have made.

default judgment is inappropriate where the movant has not suffered any prejudice. *Kuhlik v. Atlantic Corp., Inc., 112 F.R.D. 146, 149 (S.D.N.Y. 1986)*.

Using these guidelines, this court finds that the entry of a default judgment **[*537]** against Cadillac on Count IX is inappropriate. The court fails to see how Cadillac's technical oversight in failing to respond to Count IX has caused any significant prejudice to plaintiffs. In addition, in light of the damages claimed under Count IX, entry of a default judgment here would certainly constitute an overly drastic sanction against Cadillac. Therefore, plaintiffs' motion for a default judgment is denied.

CONCLUSION

For the foregoing reasons, Monaco's motion to dismiss **[**15]** is denied; the motion of Cadillac, Cadillac Life, Solomon, and Castro for a more definite statement is denied; and plaintiffs' motion for a default judgment on Count IX is denied. Finally, the parties' respective requests for costs and fees associated with their motions are also denied.

IT IS SO ORDERED.

Dated: July 10, 1989

---

**End of Document**