# EXHIBIT C

# *Everett v. Northern Reception Classification Ctr.*

United States District Court for the Northern District of Illinois, Eastern Division

April 7, 2020, Decided; April 7, 2020, Filed

Case No. 19-cv-2345

**Reporter**
2020 U.S. Dist. LEXIS 60811 *; 2020 WL 1689805

MICHAEL EVERETT, Plaintiff, v. NORTHERN RECEPTION CLASSIFICATION CENTER, WARDEN RANDY PFISTER, et al., Defendants.

**Prior History:** *Everett v. Northern Reception Classification Ctr., 2019 U.S. Dist. LEXIS 208279 (N.D. Ill., Dec. 3, 2019)*

**Counsel:** **[*1]** For Michael Everett, Plaintiff: Lawrence Craig Redmond, LEAD ATTORNEY, Attorney at Law, Chicago, IL.

For Randy Pfister, Northern Reception and Classification; Warden; in his official and individual capacities, Defendant: James Robinson, LEAD ATTORNEY, Office of the Illinois Attorney General General Law Bureau, Chicago, IL.

**Judges:** SHARON JOHNSON COLEMAN, United States District Judge.

**Opinion by:** SHARON JOHNSON COLEMAN

## Opinion

**MEMORANDUM ORDER AND OPINION**

After the Court granted defendant Warden Randy Pfister's motion to dismiss in December 2019, plaintiff Michael Everett, by counsel, brought the present first amended complaint against Warden Pfister, as well as two unknown Stateville Correctional Center ("Stateville") staff members and an unknown prison rape elimination liaison officer, under *42 U.S.C. § 1983*. Everett alleges that defendants failed to protect him from an inmate who sexually assaulted him and that certain defendants were deliberately indifferent to his serious medical needs. Warden Pfister has moved to dismiss the *Eighth Amendment* failure to protect claim against him as alleged in Count IV under *Federal Rule of Civil Procedure 12(b)(6)*. For the reasons outlined below, the Court grants Warden Pfister's motion to dismiss with prejudice.

**Background**

The following facts are taken **[*2]** as true for the purpose of this motion. During the relevant time period, Everett was in the custody of the Illinois Department of Corrections ("IDOC") and was housed at the Northern Reception and Classification Center ("NRC") located at Stateville in Joliet, Illinois. Randy Pfister is the warden of the NRC and Stateville.

On June 23, 2018, NRC staff housed an inmate named Joseph with Everett. Everett alleges that Joseph was six feet, two inches tall and weighed 230 pounds — whereas he is five feet, eight inches tall and weighs 150 pounds. Everett asserts that Joseph made statements to him that led him to believe that he had a history of molesting other

inmates. That same day, Joseph rubbed his penis against Everett. Everett was raped when he was eight-years-old, and thus this event brought back old feelings of helplessness.

Within days, Joseph requested that Everett massage him. When Everett refused, Joseph punished him by taking his food. Also, Joseph prevented Everett from completing any written grievances because Joseph checked Everett's outgoing mail. Everett did not orally complain to prison staff about Joseph because he feared that staff would not believe him and that Joseph would **[*3]** retaliate against him. On a day when Joseph had a health care appointment, Everett told a staff member that he needed to see a prison rape elimination liaison officer. According to Everett, the staff member and liaison officer recommended that Everett kick Joseph's ass. Everett eventually saw a medical doctor, who had no interest in his health once he learned that Joseph had not penetrated Everett. The staff then moved Everett to a different cell.

On July 5, 2018, Everett met with a mental health care provider for a regular follow-up appointment at which time Everett revealed the incident involving Joseph. The medical provider diagnosed Everett with Post Traumatic Stress Disorder ("PTSD") and prescribed medication. Seven days later, Everett was released on parole, sent to Cook County Jail, and then released on house arrest on July 19, 2018. Everett did not have medical insurance when he was on house arrest, and therefore, was unable to take the medication prescribed for his PTSD. As a result, Everett started to take an illegal substance, Calotropin, to deal with his PTSD. On August 7, 2018, Everett overdosed on Calotropin in an attempt to commit suicide. After he was released from the **[*4]** hospital, Everett attempted suicide again.

Everett then sobered up, but was in violation of his parole and no longer living at his house arrest address. After two months of self-medicating and hiding, Oak Lawn, Illinois police arrested Everett on October 14, 2018 and returned him to the NRC the following day. NRC staff placed Everett in a cell similar to the one where Joseph molested him causing Everett to have flashbacks and triggering his PTSD. Everett requested to see a psychiatrist because he struggled to cope with his condition. He alleges that staff disregarded his repeated requests. In early to mid-November, Stateville medical staff evaluated Everett during a routine follow-up appointment and prescribed Prozac for his PTSD and Remeron for his depression. In late November 2018, and again in December 2018, NRC medical staff discontinued Everett's Prozac prescription without explanation.

## Legal Standard

A motion to dismiss pursuant to *Rule 12(b)(6)* for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011)*. When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. **[*5]** *Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)* (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)*. A complaint is facially plausible when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)*.

## Discussion

In Count IV, Everett brings a failure to protect claim against Warden Pfister under the *Eighth Amendment*, which "obligates prison officials to 'take reasonable measures to guarantee the safety of ... inmates.'" *Sinn v. Lemmon, 911 F.3d 412, 419 (7th Cir. 2018)* (quoting *Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994))*. "A prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015)* (citation and internal quotation marks omitted). Specifically, a "prisoner seeking to establish a violation of that *Eighth Amendment* right must show that the prison official was deliberately indifferent to an excessive risk to the

prisoner's health or safety, which includes both an objective and subjective component." *LaBrec v. Walker, 948 F.3d 836, 841 (7th Cir. 2020)*.

Because the parties do not dispute that that Everett's sexual molestation was an objectively serious harm, at issue is the subjective component, namely, "the prison official must have actual, **[*6]** not merely constructive, knowledge of the risk to be liable." *Id.* "The inquiry is subjective and requires that the official know 'facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference.'" *Knight v. Grossman, 942 F.3d 336, 340 (7th Cir. 2019)* (citation omitted).

To overcome the shortcomings in his original complaint, Everett adds allegations that during the time period he was cellmates with Joseph, Warden Pfister "had the occasion to see the plaintiff and Joseph in their cell multiple times." Everett further states that "[d]espite having seen the differences in the size and weight of the plaintiff and Joseph, Defendant Pfister failed to personally question the potential for physical abuse, and failed to direct one of his subordinates to question it." Everett thus argues that Warden Pfister's knowledge of a substantial risk of serious harm can be inferred from the fact that he saw the difference in sizes between him and Joseph.

Looking to Everett's allegations as a whole, *see LaBrec, 948 F.3d at 843*, and construing all reasonable inferences in his favor, he relies on Warden Pfister's actual knowledge of the size difference between him and Joseph in asking the Court to unreasonably infer that Warden **[*7]** Pfister had actual knowledge of a substantial risk of serious harm. Everett asks the Court to take this unreasonable inferential leap without identifying a "specific, credible, and imminent risk of serious harm" of which Warden Pfister was aware. *Gevas, 798 F.3d at 481*. There are no allegations in the first amended complaint, for example, that Warden Pfister was aware of Joseph's history of sexually assaulting other inmates and it is well-established that "a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence" in prison. *Brown v. Budz, 398 F.3d 904, 913 (7th Cir. 2005)* (citation omitted). Accordingly, Everett's bare-boned statements do not give sufficient context to nudge his allegations across the line from conceivable to plausible. *Twombly, 550 U.S. at 570*; *Taha v. Int'l Bhd. of Teamsters, Local 781, 947 F.3d 464, 472 (7th Cir. 2020)*.

Meanwhile, Everett points to IDOC policy concerning the housing of compatible inmates, which requires prison staff to consider certain factors, including size differences, gang affiliation, release date, and age. This information does little to add support to the unreasonable inference that due to Joseph's and Everett's size difference, Warden Pfister had actual knowledge that a substantial risk of serious harm existed under the circumstances. Instead, it shows that inmate **[*8]** size is one factor in determining the housing of inmates and that Warden Pfister knew that size was factored into the housing decision under IDOC policy. Moreover, Everett's argument that Warden Pfister's failure to follow these guidelines supports his *Eighth Amendment* claim is misplaced because a violation of local or state policies does not amount to a constitutional deprivation. *Thompson v. City of Chicago, 472 F.3d 444, 454 (7th Cir. 2006)* ("*42 U.S.C. § 1983* protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.") (citation omitted).

Last, Everett adds facts in his response to boost his legal arguments, but "a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 448 (7th Cir. 2011)*. The Court therefore grants Warden Pfister's motion to dismiss Count IV.

**Conclusion**

Based on the foregoing, the Court grants defendant's motion to dismiss Count IV of the first amended complaint with prejudice because plaintiff has had at least one opportunity to amend his pleadings with respect to this claim. *See Runnion v. Girl Scouts of Greater Chicago & Nw. Ind., 786 F.3d 510, 518 (7th Cir. 2015)*. [22]. Plaintiff must provide the Court with a written status report concerning his efforts in identifying and serving the unknown individual defendants by no later than April 17, 2020.

IT IS SO ORDERED.

/s/ **[*9]** Sharon Johnson Coleman

SHARON JOHNSON COLEMAN

United States District Court Judge

DATED: 4/7/2020

---

End of Document